Filed 5/22/23  P. v. Redding CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BILLY RAY REDDING,<br><br>    Defendant and Appellant. | 2d Crim. No. B323749<br>(Super. Ct. No. 2013024657)<br>(Ventura County) |

Billy Ray Redding appeals from an order denying his petition for conditional release from the state hospital (Welf. & Inst. Code,[1] § 6608) after being committed as a sexually violent predator (SVP).  He contends there was insufficient evidence to support the trial court's denial of conditional release.  We affirm.

FACTUAL AND PROCEDURAL HISTORY

In 1973, Redding was convicted of forcible rape.  He was initially committed to a state hospital as a mentally disordered

_____

[1] Further unspecified statutory references are to the Welfare and Institutions Code.

sex offender but was transferred to state prison. He was released on parole in 1977.

Sixteen months later, Redding raped another woman in her home, and a jury convicted him of forcible rape and forcible rape in concert. He was sentenced to 10 years in state prison. He was released on parole in 1985.

In 1992, Redding was convicted of two counts of assault to commit rape against two women. He was sentenced to 26 years in prison.

In 2011, the Ventura County Superior Court ordered Redding committed to Coalinga State Hospital (CSH) as an SVP for an indeterminate term (§ 6600 et seq.).

*Petition for conditional release*

In September 2020, Redding petitioned for conditional release or unconditional discharge pursuant to sections 6605 and 6608. In July 2022, the trial court held a hearing on the petition.

*1. Treatment progress reports*

The parties submitted four reports regarding Redding's progress in the state hospital. In December 2019, the medical director of CSH filed an annual report prepared by Dr. Larry Wornian. Dr. Wornian declared that Redding had not completed the Department of State Hospitals Sex Offender Treatment Program and was not a suitable candidate for conditional or unconditional release.

Dr. Wornian acknowledged Redding was "actively involved" in the sex offender treatment program. However, there were "ongoing difficulties . . . encountered with respect to [his] self[-]perceived skills and capacities," which led to some issues with hospital staff.

Dr. Wornian stated that Redding was diagnosed with an "other specified paraphilic disorder" and a narcissistic personality

disorder, which was a personality feature that "makes it easier for [Redding] to act out his paraphilic urges through a sense of entitlement, a lack of empathy for others[,] and cognitive distortions about his victims." Redding consistently believed he was misdiagnosed with a narcissistic personality disorder and denied that he suffered from a qualifying mental disorder. Dr. Wornian concluded the cumulative effect of Redding's mental disorders "severely impairs both his volitional and emotional capacities[,] and predisposes him to the commission of future sexual crimes."

Because of Redding's "history of deviant sexual interest and behaviors" and because "to date [he] has not consistently participated in nor completed sex offender treatment," Dr. Wornian concluded Redding was "*not suitable for conditional release.*" Dr. Wornian opined that "conditions cannot be imposed that adequately protect the community if he were to gain conditional release." He concluded Redding still qualified as an SVP and that Redding remained a danger to the health and safety of others.

In January 2021, Liberty Healthcare of California, Inc. (Liberty), Conditional Release Program (CONREP) filed a report, which concluded that Redding was suitable for conditional release and "can be safely and adequately managed and treated in the community." Redding was enrolled in the sex offender treatment program and his attendance was "good" and his participation was "acceptable." But " 'despite his progress, there have been concerns historically regarding his transparency and level of internalization particularly related to acceptance of feedback.' " "Genuine acceptance of feedback seems to be 'difficult' for him."

The report noted that Redding continued to question his narcissistic personality disorder diagnosis and requested psychological testing to determine if the diagnosis was accurate. The report also detailed several behavioral incidents occurring from March 2019 to March 2020, which included incidents of Redding possessing contraband such as a flash drive, attempting to create " 'State Documents,' " hiding personal documents, and copying official hospital letterhead onto blank documents.

The report also summarized findings from a treatment progress review panel held in September 2020. In evaluating his potential to reoffend, one doctor noted that Redding had "anger and aggression in the past" and that " 'he shows you what he wants you to see.' " Still, Redding was "unanimously advanced to Module IV, implying readiness for [c]onditional release." The panel concluded that Redding was ready for outpatient treatment.

In December 2020, CSH's medical director filed an annual report prepared by Dr. Michelle Vorwerk. Dr. Vorwerk declared that in November 2020, Redding completed the sex offender treatment program and had "sufficient treatment for his diagnosed mental condition and other dynamic risk factors." She declared conditional release was appropriate for Redding.

Dr. Vorwerk diagnosed Redding with other specified paraphilic disorder and narcissistic personality disorder. The combined diagnosis resulted in "emotional and volitional impairments, predisposing him to the commission of sexually violent criminal acts." In assessing risk, Dr. Vorwerk concluded that Redding "represent[ed] a serious and well-founded risk of engaging in sexually violent predatory criminal behavior in the future."

4

Dr. Vorwerk opined that Redding met the definition of an SVP and unconditional release was not appropriate. And while Redding had made significant progress in his treatment, Dr. Vorwerk was concerned that he had a "difficult time accepting no for an answer and at times has been resistant when concerns about his treatment progress have been brought up." She assessed that Redding was " 'likely' " to reoffend if unconditionally released because of his mental disorder and presented a substantial danger and well-founded risk of committing future predatory acts.

Nevertheless, Dr. Vorwerk opined that Redding was ready for conditional release. She believed that he was "similar to patients who have historically succeeded in CONREP." She opined that conditions could be imposed to adequately protect the community if Redding was conditionally released.

In November 2021, CSH's medical director filed another annual report prepared by Dr. Vorwerk. Dr. Vorwerk declared that conditional release for Redding was appropriate. Dr. Vorwerk again diagnosed Redding with other specified paraphilic disorder and narcissistic personality disorder. In assessing Redding's risk of reoffending, Dr. Vorwerk concluded that he "represent[ed] a serious and well-founded risk of engaging in sexually violent predatory criminal behavior in the future."

Dr. Vorwerk opined that unconditional release was inappropriate. Redding is " 'likely' to engage in predatory sexually violent criminal behavior as a result of his diagnosed mental disorder" and "currently presents as a substantial danger, or serious and well-founded risk, of committing future sexually violent predatory acts." Redding met the legal definition of an SVP.

5

But as to conditional release, Dr. Vorwerk opined it was in Redding's best interest to be conditionally released. Due to his progress in the sex offender treatment program, Dr. Vorwerk believed Redding was sufficiently prepared to transition to a less restrictive environment and that "conditions can be imposed that adequately protect the community if he were to be conditionally released."

### 2. Prosecution evidence

Suzanne Weilepp testified at Redding's hearing. She met Redding around 2001 when she taught at Solano State Prison and he was an inmate working as her clerk. They got along and developed a "rapport, kind of a camaraderie." Weilepp maintained contact with Redding, and they talked "sometimes every day." She denied they developed a romantic relationship. She stopped talking to him around May 2022, after the district attorney contacted her about the instant petition.

Weilepp learned that Redding told CSH staff members and evaluators that she was his girlfriend. He told others they met when she was a volunteer at a women's shelter. She was "a rape victim who was helping other rape victims[,] [a]nd he wrote to where [she] worked, and [she] wrote him back. And things kind of blossomed." Redding told her his story because he wanted her to have the same story. Weilepp denied this story and denied working at a women's shelter. Redding told Weilepp that he told this false story during a lie detector test and that he "passed the polygraph with it." He also told her about upcoming polygraph tests at CSH and said he would "condition himself" so that he could pass them.

Weilepp said that in the 20 years she has known Redding, he had consistently described women based on attractiveness and "[n]ever about our accomplishments or personality. . . . Basically,

6

it's our bra size. It's our youth." He told her about some female staff members at CSH and described them by their "physical terms."

Weilepp testified that Redding was "very dismissive" about his rape victims. She asked him "point-blank, do you ever reflect on maybe you made one pregnant or something? And he said, no, I never think about it." Weilepp also said that sometimes Redding will "have a flash of insight that maybe [he] did something wrong" but "he doesn't examine it any further than that."

Weilepp testified because she believed Redding was "still a danger." Based on conversations and interactions with him over two decades and "seeing that his attitude has been pretty stable as far as objectifying women," she did not see empathy or growth in Redding.

### 3. Defense evidence

Dr. Vorwerk testified she interviewed and evaluated Redding in 2020 and 2021 for his annual evaluations and prepared corresponding annual reports. She assessed Redding's risk of reoffending, interviewed his treatment team, reviewed his medical records and past evaluations, reviewed his sex offense history, and analyzed his treatment progress. She testified that Redding received few interdisciplinary notes, no serious incident reports since his admission to CSH, and no behavioral incidents in the preceding year. And because he was now in Module 4 of the program, Redding was ready for community reintegration with the support of conditional release services.

Dr. Vorwerk also testified that Liberty is a contracted agency that works with the Department of State Hospitals, and they closely supervise clients on conditional release. Redding had

7

reviewed Liberty's "very strict adherence to their terms and conditions with the patients in their program."

Dr. Vorwerk testified that Redding was diagnosed with a narcissistic personality disorder. He acknowledged being a very manipulative person and "a great con artist" in his earlier years. Dr. Vorwerk explained: "In Mr. Redding's case, he was very manipulative and exploited others for a very long period of time." While Redding still manifests narcissistic behaviors, they have mitigated over time.

Ultimately, Dr. Vorwerk testified Redding still met the criteria of an SVP and would likely reoffend if unconditionally released. However, she opined that Redding was now suitable for conditional release and would not be likely to reoffend if released on a supervised program. He was safe for conditional release because the conditional release program had structure and provided monitoring, treatment, and polygraph tests. Weilepp's testimony did not change her opinion.

*4. Trial court's ruling*

The court denied the petition, finding the district attorney had "met their burden and shown that Mr. Redding would be a danger to the health and safety of others and that it [wa]s likely that he will engage in sexually violent criminal behavior due to his diagnosed mental health disorder even if under supervision and treatment in the community."

The court explained it found "several consistent themes" in the reports and testimony, including that "he is a serial rapist, a serial thief, he is manipulable [*sic*], and he lacks an[y] empathy and remorse." The court noted that "Dr. Vorwerk is still at the point where she can say . . . : 'It's my professional opinion that . . . he is likely to engage in predatory sexually violent criminal behavior as a result of his diagnosed mental disorder. Mr.

8

Redding currently presents as a substantial danger or a serious and well-founded risk of committing future sexually violent predatory acts as defined by Welfare & Institutions Code Section 6600."

The court stated it was "clear" that Redding "is as serious of a sexually violent predator as you will ever find," noting that he "raped multiple victims over a period of many years," "raped victims while armed with weapons," and raped a victim in front of a child. The court found that Dr. Vorwerk "laid out a compelling case why Mr. Redding [was] a continuing threat." "Based on his mental illness, his history of sexually violent predation, and his progress or lack thereof while in confinement," Redding continued to be a "grave threat."

In considering whether Redding could be conditionally released, the court found that he could not. It reasoned: "Listening to the testimony and reading the reports, it seems very obvious to me that the medical professionals hope that Mr. Redding could safely be released, but it's not anything more than just hope."

The court also noted Dr. Vorwerk "acknowledged that [Redding] is manipulative, deceptive at times, and exploitative. She accepts that now . . . as being okay, as being some reflection of his mental health condition or of something else, but I can't accept that. Maybe that's okay for the Department of State Hospitals, but it's not okay for the Court." The court said that "[i]t convinces me to question everything here. In that analysis, it does not benefit Mr. Redding."

## DISCUSSION

A person committed as an SVP "shall have a current examination of [their] mental condition made at least once every year." (§ 6604.9, subd. (a).) The annual report "shall include

consideration of whether the committed person currently meets the definition of a sexually violent predator and whether conditional release to a less restrictive alternative, pursuant to Section 6608, . . . is in the best interest of the person and conditions can be imposed that would adequately protect the community." (*Id.*, subd. (b).) The SVP may petition the court for conditional release with or without the recommendation of the Director of State Hospitals. (§§ 6604.9, subd. (d), 6608, subd. (a).)

If the trial court deems the petition for conditional release not frivolous and gives proper notice, it "shall hold a hearing to determine whether the person committed would be a danger to the health and safety of others in that it is likely that the person will engage in sexually violent criminal behavior due to the person's diagnosed mental disorder if under supervision and treatment in the community." (§ 6608, subd. (g).) If the annual report (§ 6604.9) concludes that conditional release to a less restrictive alternative is in the best interest of the person and that conditions can be imposed that would adequately protect the community, "the burden of proof shall be on the state to show, by a preponderance of the evidence, that conditional release is not appropriate." (§ 6608, subd. (k).)

We review a trial court's ruling on a section 6608 conditional release petition for substantial evidence. (*People v. Rasmuson* (2006) 145 Cal.App.4th 1487, 1504 (*Rasmuson*).) " 'In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment . . . [Citations.]' [Citation.] We resolve all conflicts in the evidence and questions of credibility in favor of the verdict, and indulge every reasonable inference [the trier of fact] could draw from the evidence. [Citation.] The testimony of one witness, if believed, may be sufficient to prove any fact. (Evid. Code, § 411.)" (*Id.* at

10

pp. 1507-1508.) In reviewing the trial court's ruling, it is not our role to reweigh evidence. We do not resolve credibility issues nor evidentiary conflicts, as those tasks are the "exclusive province of the trier of fact." (*People v. Young* (2005) 34 Cal.4th 1149, 1181 (*Young*).)

Substantial evidence supports the trial court's finding that Redding was not suitable for conditional release. Redding had a history of sexually violent crimes and reoffending when released in the community. All annual reports consistently state that Redding still met the definition of an SVP, he continued to suffer from a paraphilic disorder and a narcissistic personality disorder, and his disorders predisposed him to committing sexually violent acts. Moreover, the 2019 annual report stated that Redding was not suitable for conditional release, and the 2020 and 2021 reports concluded that Redding was likely to "engage in predatory sexually violent criminal behavior" and presents a "well-founded risk[] of committing future sexually violent predatory acts" if unconditionally released. And although the 2020 and 2021 annual reports concluded that Redding was suitable for conditional release and that conditions could be imposed to adequately protect the community, the trial court was permitted to reject this conclusion. (See *Rasmuson, supra*, 145 Cal.App.4th at p. 1509.)

As the trial court emphasized, there was evidence that Redding was manipulative, deceptive, and exploitative. Some of the reports, including the 2019 annual report and the 2020 Liberty CONREP report, noted that Redding had difficulty with transparency and genuinely accepting feedback, that " 'he shows you what he wants you to see,' " and that he disagreed with his narcissistic personality disorder diagnosis. The reports also included behavioral incidents such as attempting to hide personal

11

documents and fabricating official hospital documents. Dr. Vorwerk also testified that Redding still exhibited narcissistic behaviors. Additionally, Weilepp testified that Redding was "still a danger" and that she did not see empathy or growth in him over the span of twenty years. Weilepp also testified that Redding lied about his relationship with her to CSH staff and evaluators, admitted to lying on a polygraph test, and said that he could "condition himself" so that he can pass them. Furthermore, Weilepp testified that Redding remained "very dismissive" about his past victims, continued to objectify women, and lacked remorse or insight. Given this evidence of Redding's deception, the trial court could have reasonably weighed such evidence against the evidence supporting his conditional release.

Redding compares this case to *Rasmuson, supra*, 145 Cal.App.4th 1487, where the Court of Appeal reversed the denial of conditional release. There, the appellant presented the testimony of eight mental health professionals who "uniformly agreed that appellant would not be a significant danger to the community if conditionally released" and did not present a " 'serious and well-founded risk' of reoffending." (*Id.* at p. 1508.) In contrast, the "People failed to present a scintilla of evidence that appellant would likely reoffend." (*Ibid.*) While "the trial court was not required to follow the essentially unanimous and uncontradicted recommendations of appellant's eight expert witnesses [citation], it could not arbitrarily disregard those recommendations." (*Id.* at p. 1509.) The trial court "made no findings of fact or gave any indication as to why it chose not to accept the opinion of any of appellant's experts." (*Ibid.*)

*Rasmuson* is distinguishable. Here, the trial court did not arbitrarily disregard the expert recommendations of conditional release. Instead, in considering and weighing the testimony and

12

reports, the court found "that the medical professionals hope that Mr. Redding could safely be released, but it's not anything more than just hope." The court also noted that Dr. Vorwerk "accept[ed]" Redding's manipulative, deceptive, and exploitative behaviors as "being okay," but the court "c[ould not] accept that" conclusion. It explained that such evidence of Redding's manipulation, deception, and exploitation "convince[d] [it] to question" the expert recommendations. We defer to the trial court's credibility determinations and findings of fact so long as they are supported by substantial evidence. (*Young*, *supra*, 34 Cal.4th at 1181.) Substantial evidence supports a finding that Redding presented a risk of reoffending if conditionally released.

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

BALTODANO, J.

We concur:

GILBERT, P. J.

YEGAN, J.

13

David M. Hirsch, Judge

Superior Court County of Ventura

_____

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.